## Bishop v. Commonwealth.

(Decided April 19, 1938.)

A. N. CISCO for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Clyde Bishop, has been convicted of the crime of robbery and sentenced to ten years' imprisonment in the state penitentiary. The only ground relied upon by him in his motion for a new trial in the circuit court was newly discovered evidence. His motion for a new trial was overruled, and he has appealed.

The evidence is in narrative form, and briefly stated is as follows: J. R. Dupree, the prosecuting wit-

ness, testified that on the night of May 7, 1937, he went to a room on the second floor of a building on Front street in Catlettsburg, Ky., where a number of men, including the appellant, Clyde Bishop, were drinking and gambling. After remaining there for a short time, he left and went downstairs to the street and the defendant followed him. After he had walked along the street about 35 or 40 feet and had reached the mouth of an alley, the appellant overtook him, struck him on the head with a beer bottle, knocking him down, ran his hand in the witness' pocket, turned the pocket wrong side out, and took about $1.50 and ran. Two police officers, Dolpha Skaggs and Chris Ewing, arrived immediately after the assault and took the witness to the police station where a warrant was issued against Bishop charging him with the crime of assault and battery. The officers suggested that a warrant for robbery be issued, but, after some discussion with the police judge, it was agreed that one should be issued for assault and battery. Dolpha Skaggs testified that he was standing on the street and saw a commotion at the mouth of the alley between two men. He and Ewing ran to the scene and found Dupree a few feet back in the alley in the act of rising. One of his pockets was turned wrong side out, and they found 19 cents lying on the ground near him. Dupree informed them that he had been knocked down and robbed by Bishop. The other police officer, Chris Ewing, corroborated Skaggs. Appellant, Bishop, testified that he was in the room referred to by Dupree when the latter entered; that those present were drinking and gambling; and that Dupree was drunk when he entered the room. Dupree, after he had taken part in the gambling game, requested the appellant to lend him some money. Appellant refused, and an argument between the two followed. A short time thereafter, Dupree left and went down the stairs to the street, and Bishop followed him. When they were near the mouth of the alley, Dupree turned and struck at Bishop with his fist. Bishop dodged the blow, then struck Dupree with his fist and knocked him down and then ran away. He denied that he robbed Dupree or attempted to do so. The appellant left Catlettsburg, and was not apprehended until more than two months after the warrant for his arrest had been issued. He stated that he ran away because he had previously been convicted of a felony, and he was afraid he would be arrested for violation of his parole.

In support of his motion and grounds for a new trial, the appellant filed his own affidavit and the affidavits of J. S. Hardin and James Wellman. Hardin and Wellman stated in their affidavits, in substance, that they were in the room on Front street in Catlettsburg on the night of May 7, 1937, and heard the quarrel between Dupree and Bishop. When Dupree left the room and went downstairs, followed by Bishop, the affiants followed them and were 25 or 30 feet behind them when they saw Dupree strike at appellant and then appellant struck Dupree with his fist and knocked him down. They further stated that appellant did not strike Dupree with a beer bottle and did not attempt to rob him. Both Hardin and Wellman stated in their affidavits that they had not disclosed these facts to appellant prior to the trial. Hardin stated in his affidavit that he had known Bishop since childhood and had gone to school with him, and Wellman stated that he had known Clyde Bishop all of his life. The affidavits filed by appellant in support of his motion and grounds for a new trial disclose on their face a total lack of diligence on his part to discover the evidence and produce it at the trial. While he may not have known, as stated in his affidavit, that Hardin and Wellman saw the difficulty on the street, yet he knew they were in the room when the first altercation between him and Dupree occurred. They were lifelong friends and acquaintances, and he could have easily discovered what they knew. The natural thing to do was to interview those present when the altercation started. In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear that the evidence could not have been discovered before the trial by the exercise of due diligence. Goins v. Com., 250 Ky. 636, 63 S. W. (2d) 794; Belcher v. Com., 247 Ky. 831, 57 S. W. (2d) 988, 993; Scott v. Com., 198 Ky. 714, 250 S. W. 120. After appellant's arrest, he was out on bond several months before his trial, and he had ample opportunity to interview witnesses whom he had reason to believe knew facts material to his defense. Failure to make inquiry of persons likely to know the facts shows lack of diligence. The slightest diligence on the part of appellant would have enabled him to ascertain the facts upon which he now relies for a reversal of the judgment. As was said in Belcher v. Com., supra:

"We have learned that alleged newly discovered

160

testimony has become a handy and frequently resorted to route by which a convicted offender against the criminal laws seeks to avoid a verdict of a jury convicting him, and for that reason this and other courts have adopted the rule, not only that the alleged newly discovered evidence must be of such a nature and character as to clearly indicate that it might produce a different result at another trial wherein it could be heard by the jury, but also that the one seeking the benefit of it must make a convincing manifestation that he was deprived of it through no fault or dereliction of his own; and to that end he must make it appear that he made, or that there was made on his behalf, reasonably diligent efforts to discover the testimony before the trial but without avail, and which rule was promulgated and followed to escape impositions that might otherwise be imposed upon the court, as well as the injustice that might be visited upon the opposing litigant.''

The judgment is affirmed.